Case number 17-5206 Daniel Barbosa at L. Appellant for the United States Department of Homeland Security at L. Ms. Davidoff for the Appellant Mr. Stern for the Appellant Mr. Stern for the Appellant Mr. Stern for the Appellant Ms. Davidoff Is it Davidoff? Davidoff Davidoff Ms. Davidoff, welcome. Thank you, Your Honor. Good morning. May it please the Court, I'm Amanda Davidoff, appearing for Appellant. When my client applied for home repair assistance, FEMA used secret standards to issue denials and then forced them to appeal without revealing what criteria, standards, or procedures it used to determine eligibility. The first issue I plan to address is one of first impressions. Whether this Court can review whether FEMA violated FOIA's prohibition against using secret rules to adversely affect any person. If so, reversal is required on that ground alone. In addition to FOIA... You're going to switch the order of your presentation, huh? Yes, Your Honor. If it pleases the Court. We'll probably ask you about both anyway, but go ahead. In addition to FOIA, the Court should also reverse because FEMA violated three SAFRA Act provisions that contained mandatory requirements for the rules FEMA must publish, leaving no discretion for FEMA to proceed without standards or to use secret ones. And importantly, FEMA's rulemaking procedures are not at issue in this case. We are instead seeking an order that FEMA publish the rules it already uses to implement home repair assistance. Beginning with FOIA, the discretionary function exception does not bar FOIA claims because the conduct we challenge is not discretionary. The conduct we challenge is adversely affecting claimants based on unpublished rules, and under Morton v. Ruiz, and the plain language of the statute, FEMA had no discretion to do that. That's a bold interpretation, Morton v. Ruiz, who has mystified administrative law scholars for years. Morton, in the only case that prevents FEMA from adversely affecting claimants based on unpublished standards, it's really in the statute itself, Your Honor, and that's specifically what 552A1 says. Well, the statute refers to different policies, some of which have to be published in the Federal Register and some of which don't. How do you determine which are which? What 552A1 says is that rules, substantive rules of general applicability, interpretive rules, and procedure rules, all of those have to be published if they're going to be used to adversely affect a person. And what we know from the statute- But what does 552A2 say? 552A2 talks about the circumstances in which FEMA would have to provide reading room access for purposes of other interpretive procedures or policies. But it doesn't say that where reading room access is required, those types of rules aren't subject to 552A1. At the very least, that is FEMA's argument that because- Two types of policies, two types of rules. That is FEMA's argument that there are two types of policies and rules, and so the decision of which type to issue is a discretionary one. Your Honor, we submit that that's simply not supported by the case law. JV is the principal case on which FEMA has to rely for this. It's the only district court case in the line of three cases they cite, JV, Rosas, and St. Tammany. JV simply isn't a discretionary function exception case. In the portion of the opinion that was signed by three judges, the court reached a holding about the scope of the Federal Tort Claims Act, not about the discretionary function exception. Do you disagree with the government that there are categories of policy statements and administrative manuals addressed by other sections of FOIA that don't have to be published? There may be, Your Honor. Because, boy, if you do, I mean, that would revolutionize FOIA practice. Your Honor, there may be categories of manuals that don't have to be published. We've alleged in this case that FEMA has secret substantive rules of general applicability that it uses to adversely affect claimants. And it's a plausible allegation. Why are they adversely affected? Does adversely affected mean the same thing there that it does throughout the APA? Wasn't Congress saying there that you can't be penalized? I noticed you cite satellite broadcasting, which I'm quite familiar with, as you know. And there's a case in which somebody was told that their filing was in the wrong spot, so they lost their opportunity to preserve a claim. And we said, wait a minute, you never published where the right spot was, so that's not fair. And that clearly would be, I don't remember whether we relied on this particular section, too, or whether we just said it was arbitrary and capricious. But I don't see quite why the adversely affected language in your part of FOIA you're talking about doesn't really refer to a penalty. Were you penalized because you didn't know about this rule that should have been published? Now, why were you penalized in your case? Well, Your Honor, first of all, we don't agree that adversely affected refers to a penalty. And the right procedure here, because the plaintiffs haven't had a chance to prove adverse effect, is for them to obtain the access to the administrative record so that they can show what secret rules were used specifically to adversely affect them. In other words, it's just an issue for reading. But even if the court didn't agree with that, this Court's jurisprudence is clear that denial of access to the rules that were used to decide a claim for benefit can, in and of itself, be an adverse effect. It's akin to if... That was a due process analysis, you mean, which you did not make that argument. We didn't make a due process claim here. Although, Your Honor, the Stafford Act really does bring in concepts of due process by ordering FEMA to put in place rules that ensure equitable determination of claims. That's a big jump. That's a big jump. First of all, as you recognize, Supreme Court has never accepted the proposition that an application for benefits is a property interest under due process clause. The Second Circuit has, but not the Supreme Court. So there's no due process claim in this case. There's no due process claim, but we do have to give meaning to the words of the statute, including the word ensure equitable distribution of benefits. I know of no better way to give meaning to that statute than by reference to this Court's due process jurisprudence. But that's in the context of a statute where the benefits are wholly discretionary. We're just talking about eligibility criteria. So to use that statute as the predicate for a state-created property right seems pretty unlikely. Well, and we haven't argued that there's a state-created property right here. What we are arguing is that it's rudimentary that discretion as to the ultimate decision over whether to make a benefit available does not give an agency discretion not to follow required procedures. That's the Supreme Court's decision in Bennett v. Sears. That's the Ninth Circuit's decision in Graham v. FEMA, specifically as applied to FEMA. And, you know, the list goes on of cases that have said when you have discretion over the final decision, you don't necessarily have discretion over how to get there. And very importantly, we're not talking about a situation where there is plenary discretion over who gets benefits. Yes, FEMA has discretion to decide whether to make individual household program relief available to individual claimants. But once it makes that decision, it is constrained by the language of the statute in terms of how it makes that decision. Before we get – you're shifting over into the Stafford Act claims, I think. So before we get there, can I just ask on the FOIA, you seem now to be wanting to present a pure FOIA claim, you know, just publish all your interpretive rules independent from how Stafford Act cases are adjudicated. But in your complaint, the FOIA-related relief you seek all seems much more tied up in the Stafford Act claims. You want an injunction that prevents FEMA from using unpublished rules to decide disaster applications and order remanding applications. So I'm not sure you've articulated the pure FOIA claim that you seem to want to be pressing now. The FOIA relief – and there are two types of relief we seek for the two types of claims. But under FOIA, the relief my clients are entitled to is to have their claims reconsidered by FEMA without referencing the rules that were out there. I don't know. Under FOIA, the relief you're entitled to is to – the most you're entitled to is to have the agency publish everything that falls in the category of interpretive rules as opposed to other policy statements or administrative manuals. We certainly would not argue with that relief, Your Honor. We believe in addition to that, we're entitled to have our clients' claims re-adjudicated without using rules – without adversely affecting them based on rules that weren't public at the time those applications were submitted. That's the relief the court – So is there any case that uses FOIA as – not as a basis for ordering release of documents or publication of documents, but as the predicate for imposing procedural requirements on adjudications under other statutes that create one or another kind of government benefit? I've seen a lot of FOIA cases. I don't remember anyone like that. Morton v. Reed was a case where that was ordered, Your Honor. Well, that wasn't even a FOIA case. Well, 552A1 was at issue in that case as well. It's true, but I remember I've read it over and over. Justice Blackman's opinion is utterly misappropriate. So I don't know what you can get out of Morton v. Reed. Well, in any event, back to the question that my colleague was just asking, assuming you would prevail on the FOIA argument, and there was disclosure of whatever criteria – assuming there is criteria – do you know there is criteria? We do know there is criteria, but it's in our complaint, and it's also plausible, given that – So it's public. Then what? What's the next step? My clients would be entitled to a re-adjudication of their claim. Why? Because they were adversely affected based on rules they didn't have access to. So, in other words, you'd never get to Stafford. Is that your theory? You'd never get to the Stafford statute at all? Well, it would be important for this court to rule on both statutes. No, no, wait a minute. I'm trying to see if I can understand it. If you get your relief you want under FOIA, your claim is – let me hear you make your claim. All right, you got your criteria. Now what? If you get your relief under FOIA, the criteria have to be shown to my clients and then entitled to the re-adjudication. Yes, and then what? And under the Stafford Act, FEMA also – So, in other words, there's no way you can get relief except going back to the Stafford Act? Well, my clients would be relieved by having the standards shown to them and then having their claims re-adjudicated. But the only way you can have your claims re-adjudicated is with respect to the Stafford Act, wouldn't you? No. So, in other words, FOIA doesn't give you any right to have your claims re-tried. So, in other words, you're inevitably forced back to the Stafford Act. You know, we believe we're entitled to that relief under FOIA, but it doesn't matter because we also should prevail. No, no, no. My point is that even if you get your relief under FOIA, that doesn't give you any substantive relief. And then you're faced with a Stafford Act, right? Publication in and of itself would be substantive relief, for example, for my associational clients. But my point, Your Honor, is that FOIA does entitle my clients to re-adjudication of their claims without being adversely affected by rules that weren't public. I don't believe FOIA doesn't say that. FOIA does not say that. It may be that FEMA has to re-adjudicate based on only the rules that were public in 2016 when it decided these claims. That may be the relief, that it can't use newly published rules to decide the claims. Isn't this a problem in which this is a backwards way of undermining the restriction on judicial review in Stafford? Not at all, Your Honor. Not at all. First of all, Section 559 of the APA, enacted in 1956, says that no subsequently enacted statute is going to amend or modify FOIA unless it does so expressly. 5148 doesn't do that. So right out of the gate, 5148 can't be the basis for finding that there's no FOIA claim here, that there's no discretionary function exception for consideration of the FOIA claim. But in addition, when you read the Stafford Act altogether, the purpose of the provisions that we're looking at here is to provide eligibility standards, standards for determining eligibility, criteria, standards, procedures. In other words, to constrain the discretion of the agency to give notice so that these applications can be determined in an equitable way and so that people can have fair appeal. Yes, there's a discretionary function exception in the Stafford Act, but there are also these mandatory commands to FEMA to issue certain rules. And when you look at those mandatory commands in comparison to Section 5164 of the Act, which already gives FEMA authority to issue whatever rules it thinks are necessary in order to carry out the Act, we have to understand those three provisions as imposing a greater mandate on FEMA, something more than just whatever it thinks is necessary. If the criteria exist and they're published, now you suggest that they're different than the file, than what's in the file. Your clients can demand what's in their file, and in their file there would be, it's not clear from the briefs, there would be an indication of why they were denied X or Y. Actually, we don't know what would be in the file, Your Honor. Why? Haven't you ever asked for files? Why wouldn't you ask for files for your clients? Well, FEMA has the obligation. FEMA says in its rules that people can ask for their files. It doesn't undertake any obligation to provide those files within the 60-day appeal period. Have you asked for files? You've never even asked for files? I will have to. I don't know the answer, Your Honor, but I will respond if I will. But the files presumably would tell you why you were denied. Well, the files are not going to say the rules of decision that FEMA used. They're not going to state why you were denied. They may or may not. There's no obligation in the rules that say they're going to do that. But that's not what this is about. This is about FEMA having to issue published binding rules that contain an identifiable standard for how it determines eligibility. And that is what the district, that's what this court's long line of cases, beginning with MST, really requires in circumstances where a statute says set forth a method, set forth a criteria, set forth a standard. You need to set it forth. The statute is mandatory in the sense that it requires rules to be promulgated. But it is also very open-ended in terms of the necessary content of the rules. The principal provision you cite just says shall issue regulations to carry out the act and include criteria, standards, and procedures for determining eligibility. The agency's done that. You have ten criteria of exclusion and nine criteria of inclusion. This can't remotely be described as just a parroting regulation. The reason that the regulations are insufficient is because they really don't align with what this court has required in its line of MST, Ethel, Oceana cases. What those cases say is that when Congress has said put forth a standard, put forth criteria, put forth a procedure for doing X, it requires the agency to put forth an identifiable standard. And we do not have that here. So what the district court found and what FEMA has argued is that what the regulations do is significantly narrow the group of people who may be eligible for voting. Which seems like they are rules regarding eligibility. Rules regarding eligibility are not an identifiable standard. This is quite similar to the MST case, for example, where the agency had put out 11 criteria for carriers to meet safety fitness requirements and even had defined the word adequate, just like FEMA includes some definitions here. The court looked closely at those regulations and said, no, there's no identifiable standard here. That's the same thing the court... That's the case with the escape hatch, right? An unconstrained escape hatch? That's not the case with the escape hatch, Your Honor. That was where the court had put forth 11 factors for determining safety fitness, but it hadn't promulgated the actual standards it was using to determine safety fitness. And what the court said was because the carriers can't use these regulations to determine what their safety fitness rating is going to be, the agency hasn't fulfilled its duty to establish a means of deciding whether carriers meet safety fitness. Means of deciding with the congressional command. I think, Your Honor, is thinking of Oceana, where the agency has been ordered to establish a standardized reporting methodology. And what it had done was establish a benchmark from which... And this is the words of the court. What it had done was establish a benchmark from which the agency freely can depart. And the court said a non-binding rule is no rule at all. Well, that's exactly what we have here. All of the rules that Judge Katz has referred to are rules that say FEMA may grant relief in this circumstance. Only in the following circumstances. May grant relief in that circumstance. In other words, it doesn't constrain FEMA... Well, it doesn't compel the award of relief in any particular case, but it constrains the circumstances in which relief would be permissible. Right. As the district court put it, it's significant narrowing or narrowing. We can disagree over that. Which implements a mandatory obligation to spell out, not entitlement, but eligibility. Narrowing, though, is not sufficient under this court's precedence. I mean, MST, the 11 standards narrowed who could be eligible. Oceana, the... So you read this, shall issue regulations to carry out the act as requiring an elaborate code of regulations that will specify in each circumstance who does or doesn't get relief. Does or doesn't. In the context of a statute that creates no entitlements and is designed to govern, by definition, emergency circumstances where the agency is getting flooded with hundreds of thousands of applications and there's a huge premium on quick action in real time. I'd like to start with your last point, Judge Katz. Sure. That there's some difficulty in carrying out this relief. There really isn't. FEMA uses contractors to provide disaster assistance. It gives rules to those contractors that they use to determine who's eligible. All we're asking here is that those rules it gives to its contractors be also given to the people applying for relief. But... dictate outcomes that can be determined in advance just from reading the regulations doesn't go far enough. Every case looks at a different statute, and so they all have to be read differently. In American Trucking, the court looked at the statute, the same statute that had been at issue in MST, and looked at the regulations that were in place and said, this is enough of an identifiable standard. In MST, it was comparing the same statute to different regulations and said, this isn't enough of an identifiable standard. Sure. It's a question of degree, right? Right. Sure. And the degree here seems to be left to the agency's discretion. But what we don't have is an identifiable standard. We just have a narrow. We don't have any standard for determining eligibility. It's just saying, those people aren't eligible. But not saying how you decide among the remainder of the people who is eligible. But the remaining people are the eligible ones. Well, but some of them, as it turns out, under these secret rules, are not eligible. That's the problem. How do you know they're secret rules? Well, a couple of reasons, Your Honor. First, we're at the motion to dismiss stage. We pled it in our complaint. Your Honor, you can't plead a fact that you have an obligation under the ethics rules to make a statement that you know that. You know there are secret rules. We do, Your Honor. How do you know that? That's because of my client's loop agent case in the Fifth Circuit where discovery did proceed and my client obtained access to thousands of pages of unpublished rules, secret rules. We've asked to obtain those records here so that my client can show adverse effect and show that these are the kinds of rules that have to be published under the Stafford Act. But we don't have that access yet. But based on Loop A, we know those rules are out there. They are different from disaster to disaster, and the Loop A disaster was a different one. Oh, there are different published rules for each disaster? They're not. As we understand it, they're not dramatically different, but they are different. But, again, this is not a big burden because all FEMA has to do is give us the rules it gives to its contractors. It's got to send them to its contractors at some point before they decide eligibility. We want them to. Counsel, can I get your interpretation of 552A2? Because your brief doesn't discuss it at all, and it has a requirement that various things be made available for public inspection. And it looks as if there's considerable potential overlap between the things covered by 2 and the types of documents governed by 1. And you don't discuss how that line is drawn or who draws it. There may be an overlap, Your Honor. There is one significant difference, which is that if it's a rule, it's got to be published, right? Rule does not appear in A2. I agree. Right. 552A1 uses the word rule. 552A2 does not. The requirement that FEMA is under the Stafford Act is to use rules to determine rules. Wait, wait, wait, wait, wait. You're not talking about the Stafford Act. You're talking about that's what I was trying to stop you from that earlier. If you're going to make your FOIA claim, it's independent of the Stafford Act. Understood, Your Honor. You've really argued strongly that it has to be considered independent of the Stafford Act. Understood, Your Honor. My only point was that we know rules have to be out there because FEMA is under a congressional mandate to issue them. We don't know. In fact, your assertion is that we don't know at all what's in the non-rule provisions, right, whatever guidance, whatever it is, afforded to the contractors. Let me give you an example, Your Honor, from the discovery in the Lieber case, which is that FEMA wouldn't consider water in a house to be evidence that there was a problem with the roof. That was a rule that FEMA was using, a rule of general applicability that was being used to adversely affect. You're sure it was a rule and not guidance? It's a problem with the devil's administrative law. If it's binding and it's affecting people's rights, then it's a rule, a substantive rule. And this was a rule that was being used to deny relief to adversely affect people. Why do you say affecting people's rights? Sorry, if it's being used to adversely affect people. You don't have rights here, do you? We haven't closed your process claim, Your Honor. So you don't have rights. Well, we could, please. If Diane had wheels, she'd be a trolley car. That's not the case. That's not the case. I was just objecting to your use of the word rights when it's not in your complaints. I apologize, Your Honor. You're saying that your complaint clearly asserts that there are substantive, legally binding rules out there that have not been published in the Federal Register. It clearly does assert that, and those are the ones that act. What's the best? Some of the language of the complaint was a little ambiguous. It starts at paragraph 1, Your Honor, but I believe that the best sites are at JA-19 and JA-20 to 23 where we talk about the unpublished rules. Okay. On JA-19, my eye hits unpublished IHP policies, which sound different from substantive rules. You know, I think given the generous construction that we're entitled to on a motion to dismiss, this is where we're alleging that FEMA has unpublished rules that it's using to deny people relief. But that depends on the word rules. Well... Suppose it's policies. 552A1 also covers policies if they are... It covers A2. Right. Substantive rules of general applicability as authorized by law and statements of general policy or interpretations of general applicability formulated and adopted by the agency. I'm reading 1. I'm reading 1. However you want to characterize... If they're policies, they could be in 2, right? Well, no, because however you want to characterize what I'm referring to in the complaint, these rules that are being used by FEMA to decide who does and doesn't get relief, they are substantive rules. Are they of procedure? Are they of policy? Are they interpretations? It doesn't matter. They're all covered by 552A1. They may also be covered by 552A2. But if it belongs to the 2 slot rather than the 1 slot, which, given the overlap, is confusing at least, the special provision at the end of A1 would not seem to apply. Although it still leaves your secret law argument to the extent that it's law. Yeah. I mean, as you said, Judge Williams, there is overlap. There may be rules that fall into both buckets. But we submit you can't read rules that are being used generally, generally applicable, to determine who gets relief. You can't read that as anything else other than a general rule. An amazing part of 552A2. Is there such a thing as a statement of policy that is not a statement of general policy? I mean, that's the difference between the phrase in 2 versus the phrase in 1. What would it mean? That's a very good question, Your Honor. And it's not something the parties address in their rules. No, no, they don't. It's a letter to submit supplemental briefing. I agree. Okay. What was the assertion at JA23 that I think you're pointing to? Sure. And we were looking at really JA20 to JA23. These are where we lay out the unpublished FEMA rules that it uses to decide individual implications. And there are rules of general applicability that it's using to adversely affect people by not giving them the relief they sought. But, of course, everything depends on the word rule, right? If they're using guidance documents that under administrative law are not necessarily rules, then your FOIA argument goes away, right? Well, no, Your Honor. Actually, under 552A1, it's substantive rules of general applicability plus generally applicable policies and interpretations. So it doesn't matter. Well, you were going to say that. Yes, I see your point. But that's what gets to the confusion of the policies referred to in 2. Even if the – I mean – But this would be a peculiar result that the FOIA would be used. If you had the, quote, criteria, you would then be able to litigate the application of those criteria. Is that correct? That's certainly what we need in order to have fair and equitable administration. That's what you want. You want to be able to litigate the criteria. Litigate is a strong word. I mean, we're talking about people who are in the FEMA sector. That's why you want the criteria, so that you can see, in X situation, the criteria were applied improperly, so we can litigate that. No, Your Honor. That's not what we want. What do you want, then? We're in a situation akin to if a tree falls on someone. No, I'll just answer my question. If you have the criteria, what do you do with it? We want to have it so that applicants can advocate for their relief with the FEMA inspectors they're dealing with and so that they can appeal denial of relief based on the standards that apply. It's all within the FEMA mechanism. We're not talking about litigation in court. Now, one of the things that puzzles me about that section is you have to be adversely affected before you have a right under that, for that FOIA section, right? Well, the point is... Wait a minute, wait a minute. You have to be adversely affected. That's right, but that's not the point of the statute. The point of the statute is to prevent agencies from using... That's what the statute says. You have to be adversely affected before you have a right to these so-called rules, right? That's true. Why, in your case, you haven't shown that you're adversely affected. We plead that we're adversely affected and we will prove it. No, no, but wait a minute. I'm not sure that's enough because under that section, you have to be adversely affected as it would be true in satellite broadcasting because in that case, the individual was not allowed to file for a license because they filed in the wrong spot. Their answer was, wait a minute. There's nothing in the regulations that said where the right spot was. So that right on its face, you could see they were adversely affected. You can't show you're adversely affected. With respect to your honor, we can and we have. The way we've been... We've been adversely affected in a number of ways by being denied relief based on non-published rules. No, no, that's not what that section says. You have a right to those rules if you're adversely affected. You don't have the right to the rules unless you are adversely affected. Adverse effect arises once you're denied access to the rules. Now you're being circular. That's not the way the rule reads. I do think that's the way the rule reads. But even beyond that, what has to happen is we go back to the district court, we get the administrative record, and we show how we were adversely affected by not having access to the rules. Because the rule said water in your house isn't evidence of a roof problem, and I just presented evidence of water in the house thinking I was showing I had a roof problem. There are lots of ways we could have been adversely affected, but we just don't know right now all of them. And that's your point, basically. To the extent that you're affected by secret law, you can't show the adverse effect. Correct, Your Honor. That's a pretty big stage. That has to be taken in your favor. Thank you, Your Honor. Agreed. And I just want to say a couple more things. If the court were to find that there was some identifiable standard in the regulations, that really wouldn't end the inquiry. It would still have to go through the analysis of the regulations that was done in the American Trucking case. Ultimately, to reach the end, you know, in Whitman v. American Trucking, what the court said was an agency ultimately can't interpret a statute in a way that nullifies its purpose. And that's really the situation we've got here. FEMA was ordered to put in place criteria standards and procedures for determining eligibility, equitable procedures, and it hasn't done that, and interpretation nullifies what Congress commanded. I see my time is up. I hope I can have some rebuttal time. Thank you, Your Honor. Thank you. You may want to raise that. Is the court March term for the government? As you can see, at least for several of us, the more troubling problem in this case is the FOIA question, not the argument that you are obliged to issue more specific rules, but rather the secret law. The secret law interacts with the specific mandates because it talks about a fair and equitable appeals process. Yes, Your Honor, but I'd like to sort of unpack that point. One, the regulations establish clearly what you're supposed to do on an appeal. There are 28 declarations. 28 what? There are 28 declarations that are attached to the complaint in this case of all of the 28 plaintiffs. You look through them. What this is is a straight-out administrative procedure complaint saying the decision in these cases was not reasonable. In some of the cases, in almost all of the cases, appeals were taken. In some of the cases, the appeals were denied. In some of the cases, the amount awarded was increased. Plaintiffs were told, albeit not in detail, that they would like the other sample letter, which I thought was the most obscure of communications, among the most obscure of communications that I've seen in my life. Well, it's about the same as the ones I get from my insurance company. And this is really important. In her case, Katrina, we had a million claims. Here, it's a smaller set of disasters. We have 54,000 claims. What Congress did was it established a wholly discretionary grant program, and if Let's just do an argument, though. You win on the Stafford preclusion question. You win on that. Where do you stand on the FOIA question? We win on the FOIA question. Well, you better explain why, because that's very troubling. Because all of the claim of secret law, I mean, anybody can say they're secret law. In fact, are there criteria that are given to contractors or given to employees that indicate when someone is going to get relief or when they're not going to get relief? I invite you to look at the documents to which counsel referred. No, no, answer my question. No, of course there are guidance that are given to contractors. They say things like what you should think about whether water on the floor is in and of itself a reason to think that there is damage that makes the house uninhabitable. The petitioner argues that in order to appeal, it is necessary to know what those criteria are so that they could challenge either the facts in a particular case or the reasonableness of the criteria in an appeal. Your Honor, that's exactly the kind of determination, like proceeding, that Congress meant to preclude. The problem with that is counsel has pointed out that the FOIA statute is passed with the warning that its provisions can't be abridged unless Congress expressly does so. Your Honor, we aren't suggesting that the statute prevents FOIA. This is a statute about the extent of judicial review that's available under a wholly discretionary program. Wait a minute. Stop for a second. Let's assume there's no statute, okay? Let's assume there's no preclusion of judicial review in this statute. And that's not before us. The only thing that's before us is the FOIA case. Let's assume that's the only thing that's before us. Does the petitioner win? No. Why not? Because what we have here are standard manuals which the provision expressly contemplates may not need to be published in the Federal Register. There's countless sub-regulatory guidance, like the POMS and the Social Security Act, which contain a lot of important information. Nobody's ever thought that those need to be published in the Federal Register. So what's the legal line between substantive rules and interpretations of general applicability, which fall into A1 and therefore need to be published in the Federal Register, and policy and interpretations which fall into A2 and therefore don't need to be published in the Federal Register? It's just odd because the words seem to describe highly overlapping categories, and yet the fact that the first category has to be published and the second category doesn't suggests that there's zero overlap. I don't think that there is – I mean, obviously an agency can publish things in a discretionary way in the Federal Register. I don't think what this is meant to do is to say, I mean, I think the sending applications to Gettysburg would be a classic example. There's something that should have been published because if you can't comply with this provision, you're out. You are clearly disadvantaged. It's not that there is some secret thing. There is a real thing. It's been applied. So there's a rule, and the rule should have been published. I'm not sure why you're going at all. Well, what you don't get to do is to come in and go, there may be something that I was affected by. Well, I think Michael said that in the Fifth Circuit case, there are records there of what appear to be rules or rule-like statements. I invite the court to look. It's not the Fifth Circuit case. The Fifth Circuit case just rejected flat out the contention that you needed more detailed regulations, and that was before FEMA promulgated improved regulations. What happened on remand is exactly what Congress did not want to happen. You had years and years of discovery, at the end of which the district court, looking at all the things that counsel now says that they got, that this court should consider, went through and one by one said, no, they didn't need to be published. The only one that the district court in that case said needed to be published, and I think this is an example of how wrong the district court was. Is this a decision under FOIA A1 and 2? Yeah, this is, I think it's a 128 sub-third. Well, among other things, the FOIA was being applied, and the court said, this is what the court said was a substantive rule. It said that there was a deferred maintenance policy that said if the problem was due to deferred maintenance, then it shouldn't be considered to be the result of the storm. Now, this is so self-evident that follows from the regs that it's hard to see how that could be a problem. Let's look at the way that the district court derived that, because this is the kind of thing that plaintiffs are talking about. It goes through and says, look at, like, I've got evidence that there were PowerPoint presentations to inspectors that said things like, this is what you look for. You know, this is how the district court put together the, quote, secret law that he said shouldn't have been published in the Federal Register because it was a substantive rule. That is what we're talking about in this case. Let's be absolutely clear. This is not a secret law case. What the plaintiffs in this case want, and it's on page 32 to 33 of the joint appendix, it is a classic plea for APA relief. It says, give all what it wants for each and every person. And remember, while this is 28 people, you could have a million people asking for the same things. It says, all facts and evidence gathered by FEMA, all substantive and procedural rules applied, how FEMA applied each standard to produce its decision. And then it says, I want a redetermination without the Federal Reserve. Suppose we agreed with you entirely on the Stafford Act interpretation and the preclusion of judicial review. And instead, but we disagreed with you with respect to the FOIA. Then what? Then the Stafford Act would, this is exactly what the Stafford Act is designed to preclude. No, no, no. Is your argument that the Stafford Act implicitly amended FOIA? No. It's an argument that says what you can't get is a judicial review of determinations here. No, no, no. We're not talking about that at that point. Supposedly the issue is only whether or not plaintiffs are entitled to the so-called secret law, which is an unfair phrase, but just a disclosure, an order of disclosing that. An order of disclosing it? Yes. Sure, that's a classic FOIA case. Of course they're allowed to seek documents, which one might ask, why haven't they done that? But that's a different question. Why don't they have it? Well, no, this is, look, to the extent that this is a FOIA request for documents, we'll get right on it. That's not the relief I was just reading to this court, which is the relief that's actually asked for in this complaint. This is a request to get re-adjudications, not a request for documents. We wouldn't be here right now if that's the case. Subsection 2, in what you're pointing to, seems to be generally in line with 552A1 or possibly 2. I'm sorry, I'm not sure. I mean, to the extent that plaintiffs are asking. That's for all substantive and procedural rules and policies applied by pavement. I was reading from the passage you provided. The agency has promulgated rules that govern the grant or denial of assistance. Those rules were upheld by the Fifth Circuit. We're not talking about the rules. Forget it. Forget the Stafford Act claim. You could see what happened. The counsel got up and instead of following her brief, she went to the very end. And it was the very end where some of us have the most difficulty, which is there's a demand for policies, whether or not they're rules, policies that would adversely affect their clients. So, just forget the Stafford Act case altogether. Isn't that legitimately before us? No. I mean, the claim is legitimately before you. The relief sought, I'm leaving aside the Stafford Act. The notion that there are what, at best, are like clarifications, which the 9th Circuit in power explicitly said would not be covered by this. At best, these are clarifications. I don't want to put words in your mouth, but as I understand your theory, on this pure FOIA claim, your argument is that to the extent there may be documents which the government thinks are A2 guidance documents and we think they are A1 substantive rules or interpretations, the most we could order is publication of those documents in the Federal Register. The court could certainly order publication. We have no objection to publishing anything. We think that, I mean, there's tons of guidance that's published online. I mean, this is not a situation in which there's an absence of guidance. Not only... I understand the claim before us, although the plaintiff's failure to mention A2 confuses me. In any event, there appear to be arguments that there are materials which fit A2, which the agency can legitimately exclude from A1, and which are being held secretly. The agreement that fit A2 but not A1? I mean, I don't think that's from this argument. I think that the only thing the plaintiffs care about is having their determinations overturned. For that, they have to fit within A1. Fitting within A2 doesn't get you the rule that's in A1. Well, if there's something useful to them that has not been disclosed and is required to be disclosed by A2, forcing the disclosure of it could advantage them. It could advantage someone in a future case. Of course, this particular storm is already over. But it doesn't do the sanction, to the extent you could call it a sanction, of things not being able to be used against you. It's an A1 provision. It says things that should have been published in the Federal Register. I understand that. And let's assume we're arguing that there's nothing that is in dispute that is in A1 and not in A2. Right? Still, the secret law problem remains. In fact, there's two levels of non-secrecy implied by 552A. One, the secrecy is corrected by publication in the Federal Register. And two, secrecy involves, essentially, public inspection in the electronic format. This isn't a secrecy provision. This is about when you're supposed to publish things. It's not some provision that supplants normal APA review. If you go in, supposing these decisions were subject to APA review, what you would do is to come in and say, I have an unreasonable decision. The apparent basis for this decision does not work. I would either get a better explanation and a remand to the agency or a court would go... No, no, no, no. Wait a minute. Wait a minute. Even assuming you get publication of the guidance documents, whatever they are, that doesn't mean that there's judicial review of an agency's application of that. Because that would be precluded by the preclusion of judicial review. No. What I was saying, Your Honor, is that in a typical case, and if you look at what is wanted here, these are all the makings of your typical APA case. The FOIA has never been used. But it is being used here. That's the problem. No. I'm saying in precedent, this FOIA, in the handful of cases in which 552A has been used, it's said, okay, we have, like, there's something that's out there. It should have been published in the Federal Register as opposed to somewhere else. It was applied against you. It's very specific. It's Morton v. Ruiz, which bears no resemblance whatsoever to this case. And that is, this is a very limited provision. If that provision can be used to come in based on an allegation that there is secret law. Wait, wait, wait. Counsel, we're desperately trying to split off the FOIA claim from the Stafford claim. And I'm trying to do the same, Your Honor. No, you're mixing it up. I don't understand why. But if we just had the FOIA claim before us by itself, And we do have the FOIA claim. There's no question about it. Isn't there? It's in the complaint. You certainly have the FOIA claim. Yes, Your Honor. And if we agreed with counsel on that and said, look, you're adversely affected, certainly you being the plaintiff, certainly adversely affected with respect to filing your appeal, but to know what the guidance documents are, policies, whatever, rules. So, therefore, they should be disclosed. Now, there's a separate question as to whether they could use those documents once they're disclosed as trying to reopen or to be used as claims. And they could on administratively, but there's no showing that they would have any right to judicial review on that. Your Honor, I think if one were to accept a whole series of things, maybe they would have, though I haven't really, I don't want to answer that on the fly, but what they want is to reopen. Sure, they may want to reopen, and that would be up to the agency, up to FEMA, whether they would allow it. But they still can't get around the preclusion of judicial review. No, but essentially what, and I understand that Your Honor is dubious about this proposition, but what is being done here is that 552A is being used as a means of getting exactly the kind of review that you would not have with otherwise, because the idea, what they want is you get this stuff out there, and then the whole point of this is to say, I get a re-adjudication. Suppose we agree. Yes, but as a result of judicial review, you couldn't. But suppose we agree with you that the discretionary function provision precludes judicial review, right? So they can never come into court on any remand. They can never go back to court on the Stafford Act claim and say, look, here's the secret law that is inconsistent with the agency decision, so we want a remand on the merits determination. Sure. So is it now shipped back to the FOIA piece of the case, and the statute requires an adverse impact? Is it enough for them to say the adverse impact is if I get this additional guidance document, whatever it is, I can go back to the agency, even though I can't come into court? No. I mean, in the couple of cases that have ever applied this, the point is, say, in Morton v. Ruiz, you had a sort of determination about, like, that should have been published in the Federal Register because the Supreme Court said it was a substantive rule subject to notice and comment about which Indians were going to be eligible for benefits. You could have a rule that says, no, like, how are you supposed to apply, like, so if you needed to mail your application to Gettysburg and nobody told you that. Are you now claiming that adverse effect? Excuse me, I'm sorry. Go ahead. He presides, though. He may be a lot younger, but he presides. Are you objecting to the adverse effect? Yes, I am. Will you explain why? Because we think that for this to have any meaning, I mean, if somebody can come in and go, there's secret law, if I knew about it, it might have helped me in taking an administrative appeal. It's not the same thing as saying I had that there was a substantive rule that should have applied. It determined and found my rights, and therefore, you know... There's a guidance document that says if there's water in the bathroom, but not in the bedroom, or not in the living room, we won't give any relief. And if I had known that beforehand, I would have pointed out that I did have water in the bedroom. So, therefore, I'm adversely affected. But that's a classic APA claim. No, no, it's an APA claim that's got nothing to do with judicial review. If I had known that was the standard, I would have filed an appeal on that grounds, and maybe I'd have gotten relief. Your Honor, everybody filed an appeal. There was nobody... Nobody is... I mean, we have 28 declarations. No one is alleging anything like this. And we've been through this in the FEMA remand. It's unbelievably costly and time-consuming, and nothing comes of it. This really is a very, very serious matter. I mean... Are you saying that there's no indication in the documents filed by the plaintiff that any individual has been adversely affected by not knowing what the law is, and their answer back is it's impossible for us to make that determination until we see the documents? I think that's really the term 552A on its head. To go, there may be documents that adversely affected me, and therefore I want them published. Well, normally she relies on due process cases, but normally one concludes if you do not know the standard by which you judge, you can't write in a very effective appeal. Your Honor, these aren't private science appeals. They basically boil down to questions of habitability and what caused the damage. And there's lots of fights... Do you object to the publication of all of your guidance documents? No, we publish almost all of them. Is the answer you don't object? No. You do not object, so there's nothing to that. So assuming we agree with you on the Stafford Act, and you agree with Plaintiff on her secondary argument, so there's no dispute between the parties? No. It's one thing for me to stand here and say we don't object to publishing those. It's quite another thing to say that we don't object to publishing it. Plaintiffs get to reopen all of the administrative... That's a different matter. That's what they want. They don't object. They may want that ultimate, but they ain't going to get it. If this Court does not order the reopening of the administrative determinations, that, as far as we're concerned, sort of is what this case is about, and we're happy as long as this Court does not order the reopening of the administrative determinations. What would be really, really serious is for this Court to accept the proposition that it should order, that it should grant the relief that's actually requested by Plaintiffs on pages 32 and 33. That's really serious. To the extent that the Court would order publication, we'll publish anything. We don't have anything. We're not worried about anything. And the kind of documents that are at issue in those cases, if you look at the scene, what emerged after years of litigation, none of which are cited in Plaintiffs' case, nobody explains what it is in all of these documents, in which way they were adversely affected, and it's not enough to come in and go, I'll bet I was adversely affected. That's all that's happening here. That depends upon the increment between what has been disclosed and what would be disclosed under the concession that you appear to make. No, Your Honor, just to be clear, I'm not making any concessions. All I said is that we don't have any problems about publishing things. We've published reams of material which we cite in our briefs. If Plaintiffs had identified anything that they said that wasn't published that adversely affected them, we would have responded to that, but we can't do that. And even others they haven't difficultly identified. Your Honor, anybody can come in and go, there's something there. But after years of discovery in the other suit, they don't come to you with anything. Look at that FEMA remand. That's all that we've got here. This is only a means of reengaging in extensive discovery. Are there any cases, pure FOIA cases, where a Plaintiff comes in and says, in a FOIA complaint, gee, I think there must be some secret law. And I can't tell you what it is, but I'm suspicious. And then the court, and I want discovery. Are there any cases addressing this? It seems like that's almost a Twombly-Iqbal sort of problem. Like what is the trigger to get discovery on an allegation of secret law to fit within A1? Well, we know what, I mean, I'm not aware of any pure FOIA cases that do that. We know what happened in the FEMA remand and the nightmare of discovery that that was. And the reason that it would be a difficult FOIA complaint to make is that to come in, you would go, I mean, what you would presumably do is to request all contractor manuals. Fine, you provide the contractor manuals unless there's some exemption that's applicable. We're not arguing about that. I'm not sure contract manuals would fall within their complaint. Oh, that's exactly what they want. That's exactly what they want. That is, contractor training was what the remand in FEMA was about. This isn't about, that's all that is at issue here. And again, I invite the court to look at the remand to see what's actually at issue. This is guidance to contractors who have to perform a million, a million investigations, and they need some guidance about how to proceed. They don't bind the agency to anything. They just say, go out and look, file your report, you tell us, somebody can then appeal, you know, appeal. Appeal based on what? And you come in and it's usually a lot of these claims have to do with the fact that damage is not like sort of replacement damage. It's damage needed to make your house habitable. And so, you know, the people... You said earlier you had no objection to the disclosure of these so-called policies or rules. You have no... No, I mean, it would be nice to have a FOIA request so we know exactly what's being requested, but if we can get that. We don't have a problem unless there's some exemption that I'm not aware of. Nobody is trying to do anything secret. This is the way that an agency that has to deal with one emergency after another, dealing with like hundreds of thousands or millions of claims, and has to issue guidance to contractors on short notice frequently, you know, can't compile extensive administrative records. I mean, what Congress wanted was the agency to do its job, which is getting out relief in a hurry, not sitting around conducting extensive review provisions. I mean, that's just the nature of this statute. And there is no due process, right? The Fifth Circuit said that in Bridgley. I mean, it's just... You know, the Fifth Circuit in St. Tammany's Parish, the Eleventh Circuit in Rosas, squarely held the fact that you should have gone through notice and comment. That doesn't mean that you can say that, but that doesn't alter the fact that what you're challenging is a determination about your eligibility, and you cannot bring those notice and comment claims. So the plaintiffs have come to this circuit having, in the case of Lupe, lost in the Fifth Circuit for Texas forms, and they're asking this court to go and say, it's all right, you know, we'll order everything to be reopened. So, you know, it's an extraordinary enrung around what the sort of the past that they've already dealt with, like in the Fifth Circuit and in Texas in particular, where almost everything on the FEMA remand was rejected. So that's what's going on in this case. This court order will be the plaintiff. The result really has potentially extraordinary consequences. Thank you. Thank you, Your Honors. I think what we've just heard is an extraordinary reinvention of the Lupe litigation in the Fifth Circuit. That was a very limited litigation that addressed one provision we raised here, 5174, and had nothing to do with FOIA. On remand, the district court in Lupe found there was no discretionary function exception that barred the consideration of the FOIA claim, did consider the FOIA claim. Counsel, suppose, hypothetically, we disagree with your interpretation of the FEMA statute in light of the preclusion of judicial review. We think we're bound. We can't look at the – we disagree with all the arguments you had in your brief before you got to FOIA, which is perhaps one of the reasons you started with FOIA. But in any event, suppose we agree with you on FOIA if there are documents that are not disclosed that could bear on appeals. Let's assume we think they should be published. Then what? Well, it sounds like FEMA has no objection to publishing. But in addition, we are seeking reconsideration of my client's claims. And that's where this feels like an end run. And it's not an end run around Lupe, for reasons I'll address. But it feels like you are undercutting the bite of the discretionary function provision, which under Judge Silberman's hypothetical, we're assuming we agree with the government's position on that. So to start, the authority where courts have ordered reconsideration for violations of 552A1 appears on page 34 of our brief, Borak v. Biddle, Davidson v. FEMA, and again, the Lupe case on remand are all instances where a court ordered reconsideration based on a violation. Reconsideration of what? Reconsideration of the claim that had been made to the agency using rules. Well, I don't have that published. That is not the direct relief of a FOIA case. A FOIA case, the direct relief is publication. I was addressing the question of whether courts do order this relief. We think it is appropriate. Right, but do any of those cases have something like the discretionary function preclusion? Davidson v. FEMA was another Stafford Act case, Your Honor, and their reconsideration was ordered. Did they consider the discretionary function issue or just assume that the claim was reviewable? Which court is this? Fifth Circuit. They didn't consider the discretionary function exception in that case. But, Your Honor, those are all cases where reconsideration was ordered, and we submit that it's appropriate to order it there, order it here as well. FEMA's argument seems to be that there are plenty of things that don't have to be published under A1, so this court can't review whether it in fact violated A1 here. That really gets A1 backwards. This court gives no discretion to agencies to interpret the APA, and it does review whether they've made the right decision in how they've implemented the requirements of the APA, including FOIA, whether they had good cause to deviate from those in their comment, whether a rule is substantive or procedural. That's all plain, vanilla D.C. Circuit review of agency action. That's just what we're asking for here. That gets you, at most, publication. And we do want publication, but we also want reconsideration. I understand. Can you explain what inference we should draw from your not discussing A2 at all? Your Honor, FEMA's argument seems to be that the discretionary decision between whether to issue a rule subject to 552A1 or 552A2 gave rise to the discretionary function exception, barring the FOIA claim. It gave rise to, but that's buried in 552A, the problem about what belongs in 1 and what belongs in 2, and who decides. Well, it didn't – perhaps we misinterpreted FEMA's argument, but we understood them to be saying that some discretion was injected into this process because FEMA could decide to either issue rules under A1 or to issue rules under A2. And our response there was it's been ordered by the statute to issue rules under A1. A1 is extremely broad. There's no doubt that there are rules out there that are subject to A1 and we pledge that they're out there. So FEMA just has to publish them. Assuming they're rules. Pardon? Assuming they're rules. Or interpretations or general statements of policy or interpretations. Right. So, I mean, typically if your briefing is not given, your position is all on the line between those two. Well, but, Your Honor, this court doesn't have to decide whether the secret rules are A1 or A2. The only question the district court decided – That's true. It's a completely secret one. Yeah, and the only question the district court decided was that it didn't have jurisdiction to review the FOIA claim. So it's a matter for remand how the district court would decide whether the rules we're talking about fall under A1. So let's assume that you lose on Stafford Act claims on discretionary function grounds. You win the FOIA claim with regard to the discretionary function ruling. So what happens – and I know your position is that's all we – the second thing is all we should say in remand. So what happens? You have a FOIA complaint which makes an allegation that the agency has documents that properly fall within A1 that it is treating under A2, and it doesn't specify which ones. I mean, how is that evaluated? Does that entirely lead to discovery? Well, the district of D.C. has a rule that requires FEMA to produce the administrative record immediately in this kind of litigation. Administrative record of what? Of how my client's claims were decided. But that doesn't give feedback to the Stafford Act. I'm trying to imagine a pure FOIA case. But the administrative record would include the secret rules that were used to adversely affect them. So FEMA has to produce those right off the bat, and that's how we make the determination. That actually was what led to the costliness and time-consuming nature of the – and what Trisetti said your opponents are bothered by, is your effort to use the information you receive to reopen cases. And where we are reluctant, we generally have a view that that's not legitimate, that the conclusion of judicial review suggests we can't even interfere with the past cases. So your relief falls in deaf ears insofar as you wish to use the FOIA-obtained information in cases under the Stafford Act. Do you see the problem? But the court wouldn't be – two responses, Your Honor. First of all, the court wouldn't be running afoul of the discretionary function exception simply by ordering FEMA to do a reconsideration. No, no. All we were thinking of ordering is disclosure. Certainly wouldn't run afoul of the Stafford Act there, but even ordering reconsideration, you wouldn't run afoul of the Stafford Act because you're just saying, make the decision again. Your discretionary decision, make it again. I'm very troubled by that. That's exactly what the Fifth Circuit ordered in Davidson v. FEMA. And, you know, what FEMA has raised is, look, we have 54,000 people we dealt with in this disaster. That's a big remedy. It's a big remedy because it's an important problem and it's a big error to have not followed the statutorily mandated procedures. So if it is a big remedy, that's what FEMA brought on itself. It had notices. FEMA's been in constant litigation over its failure to disclose its procedures for years. And Judge Williams isn't the only one who says that FEMA's notices are among the most obscure he's ever seen. He's getting pretty old. I'm glad that counsel for FEMA brought up the fact that it's similar to the notice he gets from his insurance company. I thought that was not the most solicitous way to respond. I think that's a fantastic example for us, Your Honor. When you call your insurance company, you have your insurance contract in front of you, and you're able to say, here's what I'm entitled to. Here's why you're wrong. Here's why you're looking at the wrong things. This is what I'm going to press on when I have to go to your supervisor. That's what my clients wanted. That's what they were entitled to. If there's no further questions. Thank you. Thank you.
judges: Katsas, Silberman, Williams